Guy FORD, Appellant,

v.

The STATE of Texas, Appellee.

No. 48418.

Court of Criminal Appeals of Texas.

May 8, 1974.

Johnnie Abercia, Houston, for appellant.

Carol S. Vance, Dist. Atty., Ted Poe and Jim Larkin, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

Appellant was tried and convicted by a jury for the murder of K. P. Glasse. The jury assessed punishment at life imprisonment.

Appellant had previously been tried and convicted of this same offense in 1970. The jury there assessed appellant's punishment at death. On appeal to this Court, that conviction was reversed because the trial court admitted into evidence testimony concerning an extraneous offense. See Ford v. State, 484 S.W.2d 727 (Tex.Cr. App.1972).

On this appeal appellant contends that the evidence is insufficient to support the conviction.

The evidence at the instant trial was substantially the same as in the first, except evidence concerning the extraneous offense was not admitted. This being the case, a statement of the evidence in the in-

stant case will be taken from our opinion in Ford v. State, supra.

"Charles P. Glasse, Jr., testified that on May 26, 1969, he was employed with his father, K. P. Glasse, in a family owned chemical business in the city of Houston. He testified that on that date he went to the place of business early in the morning, following his usual practice. As he approached the building, he observed the appellant seated on the steps of a building located across the street from the chemical business. He parked his car and went inside, where he performed the routine tasks connected with opening the business. Shortly thereafter, he saw appellant talking with his father in the front part of the building. His father introduced appellant to him as 'Charles White,' and asked if he had work for appellant. Charles replied that he did, and told appellant to wait until he finished sweeping the floor, at which time he would show appellant the work which was to be done. Charles testified that shortly thereafter, he turned around to find appellant pointing a pistol at him. Appellant held the pistol at his head, and forced him to walk to the front office where K. P. Glasse was seated at a desk. Appellant told K. P. to give him his money. Charles testified that he then moved toward appellant, who then pointed the pistol at him. At that time, K. P. lunged toward appellant. Appellant turned and fired the pistol, the bullet striking K. P. in the hip. K. P. fell to the floor, and appellant fired again, striking K. P. in the back. Appellant took K. P.'s wallet. A brief struggle ensued between Charles Glasse and appellant, after which appellant fled from the building. He ran across an adjacent parking lot, tripping over a cable. Charles followed, shouting for someone to stop appellant. However, Charles did not continue the chase, but returned to his father. Charles was unequivocal in his identification of appellant as the per-

petrator of the crime, and did not qualify his testimony on cross-examination.

"Two other witnesses testified that they were in the adjacent parking lot at the time, and that they saw appellant run from the building and cross the lot, and heard shouting. One of the two stated that he first heard a 'bang,' and saw appellant carrying an object which appeared to be a wallet. The other witness did not hear a noise nor did he see the wallet, but he did hear the shouting and see appellant run. Both witnesses were unequivocal in their identification of appellant.

\*       \*       \*       \*       \*       \*

"Appellant testified in his own behalf, claiming to have been working at another place on the day of the murder. His employer at the job corroborated his testimony."

■ Appellant contends that his alibi testimony shows conclusively that the identification of him by the state's witnesses was one of mistaken identity. However, the jury chose not to believe appellant's version of the facts, and it is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. Hines v. State, 495 S.W.2d 252 (Tex.Cr.App.1973). Alibi is a factual question. It is within the province of the jury to reject this defensive theory and believe other testimony. Franks v. State, 462 S.W.2d 287 (Tex.Cr.App.1971). The positive identification of appellant as the person who killed Mr. Glasse is sufficient to support his conviction. Jones v. State, 500 S.W.2d 661 (Tex.Cr.App.1973).

■ Next, appellant contends that the trial court erred in refusing to sustain his challenge for cause to prospective juror Ethel Bell when it was made known that her husband had been murdered in 1965. Although Mrs. Bell stated that such fact would have no effect on her consideration in the instant case, appellant contends that

the trial court should have disregarded her statement and excused her from the jury panel. Appellant used one of his peremptory challenges to remove Mrs. Bell from the jury panel. The complete voir dire examination of the jury is not in the record before us. This Court has consistently held that in order to complain of the exclusion of a qualified juror or inclusion of an allegedly disqualified juror, the appellant must show that he was injured or forced to proceed with an objectionable juror. Brown v. State, 508 S.W.2d 91 (Tex.Cr.App.1974). In the instant case, no attempt was made to show that appellant was required to take an objectionable juror. In fact, appellant personally stated that he had no objection to the jury selected to try his case, except for the fact that no Negroes were a part of the twelve jurors selected.

■ Last, appellant contends that reversal is called for because there were no Negroes on the jury which tried him.

The record does not show exactly how many Blacks were on the jury panel in this case. The record does show that two Blacks were excused without any objection from the appellant. The record further shows that Mrs. Ethel Bell, a Black, was peremptorily challenged by appellant.

We have held that the mere showing by an accused that no Blacks served on the jury that tried him, standing alone, will not establish racial discrimination. Lara v. State, 480 S.W.2d 661 (Tex.Cr.App.1972); Ridley v. State, 475 S.W.2d 769 (Tex.Cr.App.1972); Walters v. State, 471 S.W.2d 796 (Tex.Cr.App.1971).

Appellant recognizes this rule; however, he asked us to reconsider our previous rulings. He contends that every Black defendant, such as appellant, should be tried by a jury containing at least one person of his own race. However, the Supreme Court of the United States has held that "A Negro defendant is not entitled to a jury containing members of his race,

. . . " Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In the instant case, there has been no showing of any purposeful or deliberate effort on the part of the state to deny to Blacks participation as jurors on account of their race.

There being no reversible error, the judgment is affirmed.