Nathaniel Ward v. State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-252-CR

     NATHANIEL WARD,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 98-923-C
                                                                                                                
                                                                                                         
DISSENTING OPINION
                                                                                                                

      Nathaniel Ward was charged by indictment and found guilty by a jury of the felony offense
of aggravated robbery. He was sentenced to forty-five years in prison and given a $2,750 fine. 
On appeal, Ward complains that (1) the evidence was factually insufficient to establish the offense
of aggravated robbery and (2) the trial court erred in failing to grant his motion for mistrial after
the prosecutor impermissibly injected facts which were not in evidence during final argument. I
would affirm the judgment of the trial court.
 
Issue One - Factual Sufficiency
      In his first issue, Ward argues that the evidence was factually insufficient to establish the
offense of aggravated robbery. When conducting a review of the factual sufficiency of the
evidence, we begin with the assumption that the evidence is legally sufficient. Santellan v. State,
939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We then apply the standard of review set out by
the Court of Criminal Appeals in Johnson. Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App.
2000). We ask “whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the [fact
finder’s] determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof.” Id. at 11; see also Cain v. State, 958 S.W.2d 404 (Tex. Crim.
App. 1997); Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996). In other words, evidence
can be factually insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust or (2)
the adverse finding is against the great weight and preponderance of the available evidence.
Johnson, 23 S.W.3d at 11. 
      The reviewing court must always remain cognizant of the fact finder’s role and unique
position, a position that the reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The
jury is the judge of the credibility of the witnesses and may "believe all, some, or none of the
testimony." Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). A factual
sufficiency analysis can consider only those few matters bearing on credibility that can be fully
determined from a cold appellate record. Id. at 8. Occasionally this approach permits some
credibility assessment but usually requires deference to the jury’s conclusion based on matters
beyond the scope of the appellate court’s legitimate concern. Id. (citing George E. Dix & Robert
O. Dawson, 42 Texas Practice—Criminal Practice and Procedure § 36.69 (Supp. 1999)). Thus,
unless the available record clearly reveals a different result is appropriate, an appellate court must
defer to the jury’s determination concerning what weight to give contradictory testimonial evidence
because resolution often turns on an evaluation of credibility and demeanor, and those jurors were
in attendance when the testimony was delivered. Id.
Applicable Law - Robbery
      The offense at issue in this case is aggravated robbery. The elements of robbery are:
      1)   A person--requiring proof of identity;
      2)   while in the course of committing theft;
      3)   with the intent to obtain or maintain control over the property; and 
      4a) intentionally, knowingly, or recklessly causes bodily injury to another; or
      4b) knowingly threatens or places another in fear of imminent bodily injury or death.
See Tex. Penal Code § 29.02 (Vernon Supp. 2001). One method by which the offense is
elevated to aggravated robbery is if the person uses or exhibits a deadly weapon. See id.
§29.03(a)(2). A handgun is a deadly weapon per se. Anderson v. State, 813 S.W.2d 177, 179
(Tex. App.—Dallas 1991, no pet.). Only the first element, “a person—requiring proof of
identity,” is challenged by Ward.
Evidence at Trial
A. State Witnesses
      On September 10, 1998, Daniel Phillips, a driver for Hack Branch Distribution, was
delivering beer at Adams Drive-In Store between 1:30 P.M. and 1:45 P.M. when he was robbed. 
As he was unloading the beer from the truck, the perpetrator approached him from behind and told
him to throw his wallet on the ground. Phillips turned around to comply and saw a black male
holding a black gun. The perpetrator was wearing a shower cap on his head with a baseball cap
on top, a tan blazer, no shirt, and dark slacks. The perpetrator took Phillips’s business and
personal wallets, which together contained approximately $2,750. Phillips testified that the
individual had a distinctive birthmark or scar near the temple area on his face. At trial, Phillips
identified Ward and specifically pointed to the mark or scar on the left side of his face.  
      Joseph Bailey, also a Hack Branch Distribution employee, was with Phillips the day of the
robbery. Bailey testified that when they arrived at the convenience store they took five to ten
minutes doing paperwork before they began unloading. Then Phillips began stacking the beer by
the truck and Bailey carried it in. Shortly after their arrival at the store, Bailey stated that he
noticed an odd individual wearing a beige suit jacket with no shirt, in the middle of a hot day, and
navy blue slacks. The man was also wearing a discolored plastic shower cap and a brown ball
cap. He had a birthmark or scar on his face. 
      Bailey testified that the individual walked behind the store and urinated. When he finished,
he then went to the payphone. The individual held the telephone receiver, but Bailey neither saw
the man’s lips move nor heard him speak. While Bailey was unloading the beer inside the store,
Phillips came in and told him that he had been robbed. Bailey went outside and saw the same
person he had seen earlier at the end of the parking lot. At trial, Bailey identified Ward and
specifically pointed to the mark or scar on the left side of his face.
      Pamela Jones, an Adams Drive-In employee, testified that she was walking to work at
approximately 1:50 p.m. when she saw a black man wearing a tan sports coat, dark blue or black
pants, and a plastic cap with a baseball cap on top. She identified the man she saw fleeing from
the store as someone she had seen twice in the store before the day of the robbery. At trial, Jones
identified Ward as the person she saw outside the store on the day of the robbery.
B. Defense Witnesses
      Bryan Bibles testified that on the day of the robbery, he pulled up to the convenience store
and saw the beer truck. He then heard Phillips say that he had just been robbed and Bibles turned
to see a black male running from the truck. He testified that the perpetrator was wearing an old
“straggly” brown coat and something on his head. There is conflicting testimony as to whether
or not Bibles identified the perpetrator as “Nathaniel Ward” or just “Nate” while at the robbery
scene. The investigating officer testified that Bibles identified the fleeing robber as Nathaniel
Ward, but Bibles testified that he only identified the fleeing robber as “Nate.” He denies giving
the officer the appellant’s full name.
      After Bibles learned that Ward had been arrested, however, he contacted the detective on the
case and told him that they had arrested the wrong person and that the robber was Nathaniel Lewis
not Nathaniel Ward. Bibles testified that he knew Nathaniel Lewis as “Nate” because he had
attended school with the individual, and he had given Lewis a ride a month and a half earlier. 
Bibles also knew Nathaniel Ward, having graduated from high school with him, and testified that
he was not the person he saw that day. Bibles was shown a photograph line-up during trial, and
he identified Nathaniel Lewis as the person he saw the day of the robbery.
      Lisa Childers, an employee at Easy Gardener production plant, where the appellant was also
employed, testified that she was at work the day of the offense and that she saw Ward there. She
stated that she performed a quality check at approximately 1:30 p.m. on Ward’s machine and that
he was present at that time. Childers also testified that it was possible for employees to say that
they were going to the restroom and then leave the building. Ed DeGrate, a manager at Easy
Gardener, testified that Ward produced 21 out of the usual 30 boxes the day of the robbery. He
attributed the deficiency in the number of boxes produced to machine “down time.” DeGrate
testified, like Childers, that it was possible for an employee to state that they were going to the
restroom and then leave the building. He stated that there were no restrooms in the building
where Ward worked.
      Easy Gardener’s time clock recorded time in hundredths of hours rather than minutes and on
military time rather than “A.M.” and “P.M.” Ward’s time card was introduced. It showed that
Ward began work at 6:51. The card showed that Ward took his lunch from 12:04 to 12:96 and
he left work at 15:16. Gussie Miles, a mail clerk at Easy Gardener, testified that she saw Ward
in the break room a little after 1:00 p.m. and that he left the break room at approximately 1:05 or
1:20 p.m. 
      The plant records also established that there was some “down time” on Ward’s machine the
day the robbery was committed. Dwayne Norvell, the employee that worked on Ward’s machine,
testified that he worked on Ward’s machine the morning of the offense and after lunch. Norvell
worked until approximately 2:30 p.m that day. He further testified that Ward was working on the
machine with him from 1:00 p.m. to 2:30 or 2:35 p.m. According to Norvell, he could not have
worked on the machine without Ward there. The machine’s conveyor belt was having problems
and Norvell testified that he had to have Ward feed material into the machine while he worked on
it. While on the stand, Norvell was unable to state specifically the number of times he looked
back to see if Ward was feeding the machine. However, he stated that the machine never ran out
of material.
C. State’s Rebuttal Evidence
      Officer Johnny R. Torres responded to the robbery scene. Phillips, Bailey, and Jones gave
Torres descriptions of the man they had seen, including his race, height, weight, and clothing. 
He also talked to Bibles. Torres testified that at the scene Bibles identified the man as Nathaniel
Ward, a man with whom he had gone to school. Officer Torres then turned this information and
the case over to Waco Police Department’s Special Crimes Unit.
      Steve January, a detective with the Special Crimes Unit, was assigned to the case. Based on
Officer Torres’ identification of Ward as a suspect, January prepared photographic line-ups
containing Ward’s picture. A couple of days after the robbery, January showed these line-ups to
the eyewitnesses at separate times. Phillips, Bailey, and Jones all positively identified Ward in
the photographic line-up as the perpetrator. The eyewitnesses initialed and dated Ward’s
photograph to indicate that he was the person they had seen the day of the robbery. 
      Approximately eleven days after the robbery, Detective January received a telephone call from
Bibles. Bibles stated that they had arrested the wrong person. Bibles said that the person he saw
at the robbery scene was not Ward, but someone named Nathaniel Lewis. January then prepared
another photographic line-up containing a photograph of Lewis. Phillips and Jones were shown
the new lineup containing Lewis and they did not identify any photo in this second line-up as the
perpetrator. They were then shown an unmarked copy of the original lineup with Ward’s photo
and they both again identified Ward as the perpetrator. Approximately six weeks after the
robbery, Bailey and Phillips gave written statements in which they described Ward. January
testified that it took him approximately five minutes to drive from Adams Drive-In to the Easy
Gardner plant. He stated that he drove the route around the same time of day that the robbery
occurred. 
Application
      The jury has the responsibility and duty to resolve any inconsistencies in the evidence. The
jury was free to find any of the witnesses credible or not credible. The jury could have simply
disbelieved Ward’s alibi witnesses. A trial court’s decision is not manifestly unjust merely
because the jury resolved conflicting views of the evidence in favor of the State. Cain v. State,
958 S.W.2d 404, 410 (Tex. Crim. App. 1997). Alibi is a factual question. Ford v. State, 509
S.W.2d 317, 318 (Tex. Crim. App. 1974). It was within the province of the jury to reject this
defensive theory and believe other testimony. Id. 
      Evidence with some element of untrustworthiness is customary grist for the jury’s mill. Juries
are not so susceptible that they cannot measure intelligently the weight of identification testimony
that has some questionable feature. I am content to rely upon the good sense and judgment of the
jury. Here, the verdict is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. See Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App. 2000). The
evidence was factually sufficient to sustain the verdict. Because the majority chooses to inject its
ability to weigh the credibility of the witnesses based on factors that are not apparent in the record,
I respectfully dissent.
Issue Two - Motion for Mistrial
      In his second issue, Ward alleges that the trial court committed error in failing to grant his
motion for mistrial after the prosecutor impermissibly injected facts which were not in evidence
during his final argument. During the final argument on guilt/innocence, the prosecutor made the
following statement:
“The only person we have to impeach is Dwayne Norvell. And he is the only one who
puts him there at that time. You want to believe Dwayne Norvell because the machine
cycled every ten minutes. That means somebody else couldn’t have fed that machine?
Or does it mean maybe twenty-seven hundred dollars speaks to Dwayne Norvell?”
 
Defense counsel objected and the trial court sustained the objection. Without request, the trial
court instructed the jury to disregard the last statement for any purpose. Ward then moved for a
mistrial which was overruled.
      Jury arguments are proper if they fall within the following four categories: (1) summation of
the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing
counsel, and (4) plea for law enforcement. Guidry v. State, 9 S.W.3d 133, 154 (Tex. Crim. App.
1999). Error occurs when the prosecutor interjects into the argument facts not supported by the
record. Id. 
      Nonetheless, when the trial court sustains an objection and grants a request for an instruction
for the jury to disregard but denies the motion for mistrial, the issue becomes whether the trial
court erred in denying the mistrial. Carlock v. State, 8 S.W.3d 717, 723 (Tex. App.—Waco
2000, no pet.); Faulkner v. State, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet.
ref’d). The trial court’s decision is error only if the argument is extreme, manifestly improper,
injects new and harmful facts into the case or violates a mandatory statutory provision and was
thus so inflammatory that its prejudicial effect cannot be reasonably removed from the minds of
the jury by an instruction to disregard. Carlock, 8 S.W.3d at 723; Washington v. State, 822
S.W.2d 110, 118 (Tex. App.—Waco 1991), rev’d on other grounds, 856 S.W.2d 184 (Tex. Crim.
App. 1993). See also Trent v. State, 925 S.W.2d 130, 133 (Tex. App.—Waco 1996, no pet.). 
      If the instruction cured any prejudicial effect


 caused by the improper argument, the reviewing
court should find that the trial court did not err. Carlock, 8 S.W.3d at 723-724. If the instruction
did not cure the prejudicial effect, error results, and the reviewing court proceeds with a harm
analysis. Id. at 724; Washington, 822 S.W.2d at 118. Although not expressly adopted as
exhaustive or definitive, the Court of Criminal Appeals has relied on the following factors to
determine whether an instruction to disregard cured the prejudicial effect:
      1.   The nature of the error;
      2.   The persistence of the prosecution in committing the error;
      3.   The flagrancy of the violation;
      4.   The particular instruction given;
      5.   The weight of the incriminating evidence; and
      6.   The harm to the accused as measured by the severity of the sentence.
Veteto v. State, 8 S.W.3d 805 (Tex. App.—Waco 2000, pet. ref’d). 
      Applying the foregoing factors to this case, any prejudice caused by the prosecution’s
argument was immediately cured by the trial court’s instruction. The prejudicial effect of the
argument was not of such a nature that it could not be cured by an instruction to disregard. The
jury was instructed to not consider the prosecution’s argument for any purpose. Furthermore, it
cannot be argued that the prosecution was persistent in committing the error because the argument
was only mentioned once. The argument was not so flagrant or offensive that the timely
instruction to disregard did not cure the prejudicial effect, if any. Thus, I conclude that the court’s
instruction was sufficient. I would overrule Ward’s second issue.
Conclusion
Having resolved both issues against Ward, I would affirm the judgment of the trial court. Because
the majority does not, I respectfully dissent.
 
                                                                   TOM GRAY

                                                                   Justice

 
Dissenting opinion delivered and filed on May 23, 2001

Publish