NO. 07-00-0025-CR



IN THE COURT OF APPEALS


 

FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



APRIL 3, 2003



______________________________




MICHAEL XAVIER SMITH, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 282ND DISTRICT COURT OF DALLAS COUNTY;



NO. F-9970058-MS; HONORABLE KAREN J. GREENE, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

OPINION


 Michael Xavier Smith appeals from his conviction for capital murder and sentence
of life imprisonment. We affirm. 

BACKGROUND

 On November 22, 1998, Rudecindo Villatoro Alfara (Alfara) was sitting in his truck
outside his apartment with his nephew, Nelson Bladmir Alfara (Nelson). A group of three
men approached them. The men walked past Alfara and Nelson, then one of the men
returned. This man, who walked with a limp, demanded money, then immediately shot
Nelson with a revolver. Nelson died at the scene. 

 Appellant was arrested and indicted for capital murder. The case was tried to a jury. 
Appellant was convicted and sentenced to confinement in the Institutional Division of the
Texas Department of Criminal Justice for life.

 By two issues appellant urges that we reverse his conviction. First, he contends that
the trial court erred in finding that the State exercised its peremptory challenges in a
racially neutral manner and in overruling appellant's Batson (1) objection. Second, appellant
challenges the factual sufficiency of the evidence to support the jury's verdict.

ISSUE 1: THE BATSON CHALLENGE

 By his first issue, appellant, a black male, alleges that the State engaged in
purposeful discrimination in exercising its peremptory strikes against black potential jurors
so that no black jurors would sit on the jury of appellant's trial.

 The deliberate or purposeful denial of jury participation to citizens because of race
violates an accused's rights under the Equal Protection Clause of the Fourteenth
Amendment to the Federal Constitution. Id. See also Tex. Code Crim. Proc. Ann. art.
35.261 (Vernon 1989). In Batson, the Supreme Court set out a three step test for the
courts to follow in determining whether there has been an equal protection violation in the
context of racial discrimination. See Rhoades v. State, 934 S.W.2d 113, 123
(Tex.Crim.App. 1996). A defendant who challenges the State's exercise of a peremptory
challenge must prove a prima facie case of racial discrimination. If such a prima facie
showing is made, the burden of production falls to the proponent of the strike to tender a
race neutral explanation. Id. If a race neutral explanation is tendered, the trial court must
evaluate the explanations in light of the circumstances to determine whether the reasons
tendered are merely a pretext. See Johnson v. State, 879 S.W.2d 313, 316
(Tex.App.-Amarillo 1994, no pet.) The Court of Criminal Appeals has articulated a non-exclusive list of factors for the trial court to consider in weighing race-neutral explanations. 
See Whitsey v. State, 796 S.W.2d 707, 713 (Tex.Crim.App. 1989). Those factors are:

 (1) the reason given for the peremptory challenge is not related to the facts
of the case;


 (2) there was a lack of questioning to the challenged juror or a lack of
meaningful questions;


 (3) disparate treatment (persons with the same or similar characteristics as
the challenged juror were not struck);


 (4) disparate examination of members of the venire such as questioning a
challenged juror so as to evoke a certain response without asking the same
question of other panel members; and


 (5) an explanation based on a group bias where the group trait is not shown
to apply to the challenged juror specifically.


Id. at 713-14.


 We review the evidence in the light most favorable to the trial court's decision, and
determine whether the record supports the findings of the trial judge. See Pondexter v.
State, 942 S.W.2d 577, 581 (Tex.Crim.App. 1996). Our review is based on the evidence
that was before the trial court at the time of its ruling. See Parra v. State, 935 S.W.2d 862,
870 (Tex.App.-Texarkana 1996, pet. ref'd). If there is sufficient evidence to support the
trial judge's finding of no purposeful discrimination, the finding will not be disturbed on
appeal. See Fuentes v. State, 991 S.W.2d 267, 278 (Tex.Crim.App. 1999). In the matter before us, we need not consider whether appellant proved a prima
facie case of racial discrimination because the trial court took evidence as to and ruled on
the ultimate issue of intentional discrimination. See Goode v. Shoukfeh, 943 S.W.2d 441,
445 (Tex. 1997); Johnson, 879 S.W.2d at 315. Thus, we consider whether the State
produced evidence of a race-neutral reason for the peremptory challenge. See Rhoades,
934 S.W.2d at 123. Evidence of a reason offered by the State, as long as it is facially valid
and not inherently discriminatory, is sufficient to rebut a prima facie case of intentional
discrimination. See Williams v. State, 937 S.W.2d 479, 485 (Tex.Crim.App. 1996);
Yarborough v. State, 983 S.W.2d 352, 354 (Tex.App.-Fort Worth 1998, no pet.). 

 The prosecutor stated that he struck jurors 2 and 6 because those jurors both had
either a friend or relative who had served time in the state penitentiary. In regard to juror
30, the prosecutor stated that she was struck because she had a problem with the "one-witness" rule (2) and because she had a son who was, at the time of appellant's trial, in jail
in Dallas County awaiting trial on a charge of unlawful carrying of a weapon. But, the fact
that a potential juror has or has had a family member in trouble with the law or formally
accused of a crime is a valid, race-neutral reason to exercise a peremptory strike against
that juror. See Whitaker v. State, 977 S.W.2d 869, 875 (Tex.App.-Beaumont 1998, pet.
ref'd); Ealoms v. State, 983 S.W.2d 853, 856 (Tex.App.-Waco 1998, pet. ref'd); Adams
v. State, 862 S.W.2d 139, 145 (Tex.App.-San Antonio 1993, pet. ref'd). Moreover, a
prosecutor's belief that a potential juror could not convict on the testimony of one witness
has also been held to be a valid, race-neutral explanation for the State's exercise of a
peremptory challenge. See Esteves v. State, 849 S.W.2d 822, 823 (Tex.Crim.App. 1993); 
Tate v. State, 939 S.W.2d 738, 746-47 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd); 
Garrett v. State, 815 S.W.2d 333, 335-36 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd). 
Thus, the State articulated racially-neutral reasons for striking jurors 2, 6 and 30.

 Proceeding to the third step in the analysis, we next consider in light of the
circumstances of the case whether the race-neutral reasons offered by the State are
supported by the record or are merely pretexts for racial discrimination. See Johnson, 879
S.W.2d at 316. In this regard, appellant contends that the State disparately treated the
venire by failing to strike non-minority (3) potential jurors who shared the same or similar
characteristics the State found objectionable in black potential jurors who were struck, and
disparately examined the venire by failing to ask the same questions of non-minority
potential jurors who possessed the same or similar characteristics the State found
objectionable in black potential jurors in an attempt to manipulate the record so as to
disguise the State's purposeful racial discrimination in the exercise of its peremptory
challenges.

 As previously noted, the State's evidence was that it struck black potential jurors 2
and 6 for the racially-neutral reason that they had either a friend or relative who had served
time in the state penitentiary. The prosecutor stated that he challenged non-minority
potential jurors 7, 16, 19 and 24 for the same reason. The prosecutor stated specifically
that in exercising the State's peremptory challenges he differentiated between potential
jurors who had friends or relatives who had been placed on probation versus potential
jurors who had friends or relatives who had served time in the state penitentiary. On cross-examination, the prosecutor stated that he did not strike non-minority potential jurors 1, 12,
20 or 31 because his notes did not demonstrate that any of those jurors had friends or
relatives who had served time in the penitentiary. 

 The record reflects that Juror 1 had an old friend who had been charged with
burglary of a house approximately seven years prior. Juror 1 never stated whether his
friend had been convicted or if his friend ever served any time in the state penitentiary. 
Juror 12 stated that she had an uncle who was sentenced to probation approximately three
years prior. Juror 20 stated that he had a brother and a friend who had been charged with
"drugs" in Dallas County, and that he himself had been charged with DWI 14 years prior. 
Juror 20 never stated whether he, his brother or his friend had even been convicted or
served any time in the penitentiary. Juror 31 stated that he had two distant cousins who
had both been charged with child abuse. In the case of one cousin, Juror 31 stated that
the cousin was charged with and "punished" for child abuse. He did not elaborate on what
form of punishment his cousin received. In regard to the other cousin, Juror 31 stated that
his conviction was later overturned. He also stated that "now they're not in the pen." 
Viewed in a light most favorable to the trial court's decision, his statements are insufficient
to conclude that either of his cousins had been in the penitentiary. The record, therefore,
does not mandate a conclusion that the State challenged only black jurors who had friends
or relatives who had served time in the penitentiary. In fact, the record demonstrates that
the State challenged non-minority potential jurors 7, 16, 19 and 24 for the same reason. (4) 
Additionally, in regard to non-minority potential jurors 1, 12, 20 and 31, the prosecutor's
statement that he did not strike those non-minority potential jurors because his notes did
not demonstrate that any of them had friends or relatives who had served time in the
penitentiary is supported by the record of voir dire.

 In regard to juror 30, the prosecutor stated that she was challenged for two reasons,
first, because she had a problem with the "one-witness rule," and second, because she
had a son who was then incarcerated awaiting trial in the same jurisdiction for the offense
of Unlawful Carrying of a Weapon. Appellant argues that the State failed to strike potential
non-minority jurors who also expressed problems following the one-witness rule. However, 
the record demonstrates that the prosecutor struck juror 25, a non-minority, because she
also had a problem following the rule. 

 Moreover, even assuming, arguendo, that there were other non-minority potential
jurors who expressed difficulty understanding or following the rule but were nevertheless
not struck by the State, such treatment does not automatically lead to a finding of
purposeful racial discrimination by the State. Disparate treatment in the exercise of
peremptory challenges cannot automatically be imputed to the State in every situation in
which the prosecutor states a combination of reasons for challenging a particular juror, and
one of the prosecutor's stated reasons would technically apply to another potential juror
whom the prosecutor found acceptable. See Adanandus v. State, 866 S.W.2d 210, 224-25
(Tex.Crim.App. 1993). Different jurors may possess the same objectionable characteristic
but in differing degrees. See Cantu v. State, 842 S.W.2d 667, 689 (Tex.Crim.App. 1992). 
Such qualitative distinctions may cause a prosecutor to challenge one such juror and not
another. Id. Here, the record shows that the State struck at least one non-minority
potential juror for the same reason as juror 30. Moreover, the prosecutor also stated that
he struck juror 30 for another reason which has already been discussed above and
determined to be racially neutral by the trial court, supported by the record, and non-pretextual. Therefore, under the circumstances of the case, there was sufficient evidence
for the trial court to find that the State did not disparately exercise its peremptory
challenges.

 For the first time on appeal, appellant further argues that the State failed to strike
four non-minority potential jurors seated on the fourth and fifth row of the jury panel, even
though the record conclusively demonstrates that these jurors had friends or relatives that
had served time in the state penitentiary. (5) Appellant argues that the State's failure to strike
these non-minority potential jurors who shared the same characteristics which the State
found objectionable in black potential jurors amounted to purposeful racial discrimination
by the State in the exercise of its peremptory challenges. 

 Appellant has preserved this issue for appeal. (6) The record, however, contains no
evidence as to the prosecutor's reasons for not striking the non-minority potential jurors in
question. It may be, for example, that the prosecutor did not intend to strike any jurors
after a particular number had been reached. See Williams v. State, 939 S.W.2d 703, 706
(Tex.App.-Eastland 1997, no pet.) (prosecutor's explanation that he struck all jurors who
shared a particular characteristic up to juror number 58 constituted a legitimate race-neutral reason for the exercise of peremptory challenges).

 The record contains affirmative evidence that the prosecutor's strikes were for
legitimate race-neutral reasons. Viewing the evidence in the light most favorable to the trial
court's decision, the State's unexplained (and unexplored) failure to strike the venire-members in question is insufficient evidence of purposeful racial discrimination to justify
disturbing the trial court's decision.

 Next, appellant argues that the State disparately examined black potential jurors so
as to develop a record that would support the State's explanations for striking those jurors,
while not asking the same questions of non-minority potential jurors. Appellant alleges that
when a potential black juror indicated that he or she had a friend or relative who had
experienced trouble with law enforcement, the State consistently asked the potential juror
about the disposition of the case, whereas in regard to non-minority potential jurors, the
State consistently avoided asking about the disposition of any friends' or relatives' cases. 
Appellant alleges that the disparate examination was the result of purposeful racial
discrimination by the State.

 An analysis of the record indicates that appellant's allegation of disparate
examination is not correct. First, of the 29 potential jurors who indicated they had a friend
or relative who had experienced trouble with the law, 13 jurors volunteered information
regarding the disposition of such cases. The State questioned another 10 jurors regarding
the disposition of their friends' and relatives' cases. (7) Two of those jurors were black, while
the other eight were non-minority. The non-minority potential jurors who were questioned
included juror 7, juror 12, juror 19, juror 24, juror Margotta, and juror Matherson. 
Furthermore, from the record of the strikes exercised by the State and the State's
explanation of those strikes at the Batson hearing, the trial court could have concluded that
the jurors' answers to the State's questioning led directly to the striking by the State of non-minority potential jurors 7, 19 and 24. (8) Thus, the record demonstrates that the State
questioned both black and non-minority potential jurors regarding the disposition of their
cases. The State is not required to ask every potential juror any specified rubric of
questions. See Chambers v. State, 866 S.W.2d 9, 24 (Tex.Crim.App. 1993).

 In sum, the State provided racially-neutral justifications for striking each juror. The
State's justifications and the trial court's conclusions are supported by the record. 
Appellant's first issue is overruled.

ISSUE 2: FACTUAL SUFFICIENCY OF THE EVIDENCE

 By his second point of error, appellant contends that the evidence was factually
insufficient to support the jury's verdict. He argues that the evidence was factually
insufficient because the State's eyewitness vacillated in his identification of appellant, and
because there was evidence supporting appellant's defensive alibi theory.

 When reviewing the factual sufficiency of the evidence, all of the evidence is
reviewed. See Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). Where, as
here, the verdict is in favor of the party with the burden of proof, the verdict is set aside only
if the proof of guilt is either so weak or so contrary to the overwhelming weight of the
evidence as to be clearly wrong and manifestly unjust. See Johnson v. State, 23 S.W.3d
1, 11 (Tex.Crim.App. 2000). 

 Unless the record clearly reveals that a different result is appropriate, an appellate
court must defer to the factfinder's determination concerning what weight to give
contradictory testimonial evidence because resolution often turns on an evaluation of
credibility and demeanor, which is primarily a determination to be made by observation of
the witnesses giving the testimony. Id. at 8. The trier of fact has discretion to accept or
reject all or any part of any witness's testimony and reconcile conflicts in the evidence. 
See Losada v. State, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986). The court of appeals is
not free to re-weigh the evidence and set aside a jury verdict merely because it believes
that a different result is more reasonable. See Cain, 958 S.W.2d at 407. 

 At the outset, it should be observed that mistaken identification and alibi are
defensive theories offered to negate the identity element of the charged offense. See
Giesberg v. State, 945 S.W.2d 120, 124 (Tex.App.-Houston [1st Dist.] 1996 aff'd, 984
S.W.2d 245 (Tex.Crim.App. 1998). Therefore, appellant's issue is treated as challenging
the sufficiency of the evidence to prove identity. Id.

 Alfara identified appellant in court as the person who shot his nephew Nelson. 
Alfara testified that appellant and two other men walked up to them as they were sitting
outside his apartment; appellant said "The money, Bato"; and then appellant immediately
shot the victim. Alfara testified that appellant and the other men then slowly ran away, and
appellant was limping as he ran. Alfara testified that he got a good look at appellant, and
that he saw his face clearly. 

 Alfara testified that he previously identified appellant as the perpetrator on January
3, 1999 from a police photo-lineup. He also testified that in a pre-trial hearing the day
before appellant's trial, he said that he was not sure if appellant was the perpetrator. Alfara
testified that the reason he said he was not sure was because he was afraid of what might
happen to him if he told the truth. He said that he was afraid because his brother told him
about someone in Houston who was killed after identifying someone.

 Alfara was cross-examined regarding prior inconsistent statements. He testified that
he described the perpetrator to police as being tall and young, whereas appellant appeared
to him in court to be about 5' 6'' or 5' 7'' (9) and about 35 years old. Alfara also stated that
in the pre-trial hearing, he did not say anything about the perpetrator slowly running away. (10)

 Appellant also introduced evidence of an alibi. Appellant's brother and two sisters
testified that appellant had spent the entire weekend of November 22, 1998, at his sister
Beatrice's house in Pleasant Grove. Appellant's witnesses all testified that appellant was
using crutches to walk that weekend and that appellant did not have a car to take him
anywhere. On cross-examination, however, appellant's brother repeatedly testified that
he was not good at keeping up with dates and did not know the date, or even the month,
that appellant was at his sister's house. Appellant's brother also testified that appellant
could have used the bus for transportation. Appellant's sister Lois Head testified that she
did not see appellant every day while he stayed with Beatrice. Moreover, she testified that
she twice saw him walking without his crutches. Thus, appellant's sister Beatrice Smith
was the only defense witness to testify that she was certain that appellant was at her house
the entire weekend that the murder was committed. She also testified that appellant was
at her house at about 11:30 or 11:45 on December 9, 1998.

 In rebuttal, the State presented three witnesses. The first witness was Christopher
Allen, a police officer with the City of Dallas. Officer Allen testified that he encountered
appellant in an area near the Apple Creek apartments just after midnight on December 10,
1998. Johanna Rodriguez, the manager of the Apple Creek apartments, testified that she
recalled seeing appellant in the vicinity of the Apple Creek apartments around
Thanksgiving. Finally, the State called Melvin Williams, a private security guard for the
Apple Creek apartments. Williams testified that he saw appellant at the apartment
complex the night after the murder. 

 The positive identification of a defendant as the perpetrator is sufficient to support
a conviction. See Garcia v. State, 563 S.W.2d 925, 928 (Tex.Crim.App. 1978); Ford v.
State, 509 S.W.2d 317, 318 (Tex.Crim.App. 1974); Lopez v. State, 815 S.W.2d 846, 849
(Tex.App.-Corpus Christi 1991, no pet.). Regardless of Alfara's prior statements, at trial
he positively identified appellant as the perpetrator of the crime. As appellant does not
challenge the admissibility or reliability of Alfara's in-court identification, appellant's
challenge goes to the weight of the evidence, not its admissibility. See Bledsoe v. State,
21 S.W.3d 615, 621 (Tex.App.-Tyler 2000, no pet.). The jury was in the best position to
judge Alfara's demeanor and credibility and determine the appropriate weight to give his
in-court identification of appellant as the perpetrator. See Johnson, 23 S.W.3d at 8. The
fact that Alfara may have previously been uncertain in his identification of appellant as the
perpetrator was merely a factor for the jury to consider in assessing the weight of his
testimony. See Garcia, 563 S.W.2d at 928; Bledsoe, 21 S.W.3d at 621.

 In regard to appellant's alibi evidence, the jury is entitled to disbelieve evidence of
an alibi. See Ford, 509 S.W.2d at 318. Even if the prosecution fails to rebut alibi
evidence, the jury is not required to believe such evidence or acquit the defendant. See
Johnson v. State, 449 S.W.2d 479, 480 (Tex.Crim.App. 1970). Where, as here, there was
conflicting testimony regarding appellant's alibi, the jury possessed the sole discretion to
decide which evidence to accept or to reject and to reconcile conflicts in the evidence. See
Losada, 721 S.W.2d at 309.

 In conclusion, there was sufficient evidence for the jury to resolve the issue of
identity against appellant and convict him of the offense. See Ford, 509 S.W.2d at 318. 
The proof of guilt is not so obviously weak as to undermine confidence in the jury's
determination, nor is the proof of guilt greatly outweighed by contrary proof. See Johnson,
23 S.W.3d at 11. The evidence is not factually insufficient to support the verdict. 
Appellant's second issue is overruled.

CONCLUSION Having overruled both of appellant's issues, we affirm the judgment of the trial court. 


 Phil Johnson

Do not publish. Chief Justice
1. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
2. No objection was lodged to questions concerning the "one-witness rule."
3. The record does not affirmatively demonstrate the racial or ethnic background of
every potential juror on the panel. For convenience, jurors not affirmatively demonstrated
to be black shall be referred to as "non-minority" jurors, regardless of any potential juror's
actual status as a member of a racial or ethnic minority.
4. In regard to juror 24, a non-minority, the prosecutor stated at the Batson hearing
that he struck her because his notes showed that her ex-husband was in the penitentiary. 
A review of the record of voir dire, however, reveals that juror 24 said that her ex-husband
had received probation. Therefore, in regard to juror 24, the prosecutor's notes were not
correct. As the prosecutor made the statement in regard to a non-minority potential juror
that he struck, there is no issue concerning purposeful racial discrimination on the part of
the State due to the prosecutor's inaccurate notes. 
5. Potential juror Taylor, a fourth-row juror, had a friend who received five years in the
state penitentiary. Another potential juror in the fourth row had a son who received four
years penitentiary time. Potential juror Curtis, seated in the fifth row, had a friend in the
state penitentiary. Potential juror Nelson, also seated in the fifth row, was then married to
a man who was serving a life sentence in the penitentiary. None of these non-minority
potential jurors were struck by the State.
6. See Young v. State, 826 S.W.2d 141, 146 (Tex.Crim.App. 1991).
7. The remaining jurors either were not questioned by the State regarding disposition
or gave information that was non-responsive to the questioning.
8. See n.4, supra, concerning the State's peremptory strike of juror 24.
9. Alfara stated that he considered appellant to be tall at that height.
10. On re-direct, Alfara testified that in a statement he gave to police, he said "He shot
my nephew with a small, stainless revolver, and then walked away with no hurry."



 find the trial
court’s failure to include a further instruction requiring unanimity as to one distinct incident
did not contribute to the conviction. Tex. R. App. P. 44.2(a). See Phillips, 193 S.W.3d at
914. Point of error two is overruled.
          II.       Factual Sufficiency
          When conducting a factual sufficiency review, we examine all the evidence in a
neutral light and determine whether the trier of fact was rationally justified in finding guilt
beyond a reasonable doubt. Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007),
cert. denied, ___ U.S. ___,128 S.Ct. 282, 169 L.Ed.2d 206 (2007); Watson v. State, 204
S.W.3d 404, 415 (Tex.Crim.App. 2006).


 We give deference to the fact finder’s
determination when supported by the record, and cannot reverse a conviction unless we
find some objective basis in the record demonstrating that the great weight and
preponderance of the evidence contradicts the verdict. Watson, 204 S.W.3d. at 417. The
criminal verdict will be set aside “only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust, or the contrary evidence so strong that the standard of proof
beyond a reasonable doubt could not have been met.” Garza v. State, 213 S.W.3d 338,
343 (Tex.Crim.App. 2007). In addition, the fact finder is entitled to judge the credibility of
the witnesses and may choose to believe all, some or none of the testimony presented. 
Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). 
          Any inconsistency between T.C.’s statements made shortly after the assault to her
foster father, police officers, and rape crisis worker, and her subsequent testimony at trial
went to her credibility. That Appellant and T.C. engaged in sexual intercourse in Lubbock
on September 16 at a friend’s house is also supported by evidence that Appellant met her
several times at other persons’ homes for the purpose of having sexual intercourse and
then T.C. returned as quickly as possible to avoid detection by her foster parents. 
Moreover, when T.C. called Appellant to arrange the September 16 meeting, she initially
planned to remain in Lubbock. Based upon this evidence, the jury could have reasonably
believed that Appellant sexually assaulted T.C. in Lubbock on September 16 even though
T.C.’s trial testimony was inconsistent with her earlier statements. See, e.g., In re A.B.,
133 S.W.3d 869, 873-74 (Tex.App.–Dallas 2004, no pet.); Washington, 127 S.W.3d at 205. 
          Our evaluation of the evidence “should not substantially intrude upon the jury’s role
as the sole judge of the weight and credibility of witness testimony.” Jones v. State, 944
S.W.2d 642, 648 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 39
L.Ed.2d 54 (1997). To the extent Appellant claims the evidence is factually insufficient
because T.C.’s prior statements were not credible or the jury gave insufficient weight to the
testimony of Appellant’s friends, we hold that the evidence in support of the jury’s verdict
was not so weak as to render the verdict clearly wrong or manifestly unjust. Appellant’s
first point of error is also overruled.Conclusion
          The trial court’s judgment is affirmed. 
                                                                           Patrick A. Pirtle 

 Justice 

 



Publish.