

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00025-CR

ADRICK L. HOUSTON                                                           APPELLANT

V.

THE STATE OF TEXAS                                                                STATE

----------

## FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1429561D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Adrick L. Houston appeals his first-degree-felony conviction for aggravated assault[2] and his sentence of seventy years' confinement. In two points, he contends that the punishment-phase jury charge erroneously gave him the burden to disprove a sentence-enhancement allegation beyond a reasonable

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.02(a)(1), (b)(1) (West 2011).

doubt and that the evidence is insufficient to support his conviction. Because we conclude that the jury charge, although erroneous, did not cause egregious harm and that the evidence is sufficient to support the conviction, we overrule Houston's points and affirm the trial court's judgment.

**Background Facts**

Y.L. (Yvonne)[3] met Houston in 2015. Their relationship developed into a friendship within a matter of days and into an intimate relationship within a couple of weeks. She eventually moved in with him. Although Yvonne and Houston used methamphetamine together, Yvonne became uncomfortable with Houston's drug habits and ended her romantic relationship with him. She moved out of his house, preferring instead to sleep in her car, but she kept some of her personal property at his house with the intent of moving it out at a later date.

Not long thereafter, Houston asked Yvonne for a ride in exchange for gas money. After giving him a ride, she returned to his house later that day to get the money. When she arrived that evening, she saw him arguing with another man and threatening him with a knife. After that man left, Houston approached Yvonne and asked her if she would like to stay the night, to which she declined. Yvonne began gathering some of her possessions, and Houston began repeatedly asking her whether she was going to leave him. Yvonne then saw Houston having an argument with another woman.

---

[3]To protect Y.L.'s anonymity, we use an alias. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

2

According to Yvonne's testimony, she ultimately ended up in Houston's back bedroom with him and several others, all of whom were smoking methamphetamine. Shortly thereafter, Houston left the room. Yvonne was sitting close to a bedroom door when her shoulder suddenly felt hot. She looked up and saw Houston standing behind her with a knife in his hand. According to Yvonne, Houston stabbed and attacked her while the other guests fled. Houston then left the house. He left Yvonne on the floor bleeding; she did not know what had prompted the attack.

Yvonne called 9-1-1 and identified Houston as her assailant. At a hospital, she discovered that she had received five stab wounds, at least two of which were life threatening. She stayed at the hospital for several days.

A grand jury indicted Houston for aggravated assault. For sentence-enhancement, the indictment alleged that he had a prior felony conviction of aggravated assault with a deadly weapon. After a jury considered the parties' evidence and arguments in the guilt and punishment phases of a trial, it found Houston guilty of aggravated assault, found the indictment's sentence-enhancement allegation true, and assessed seventy years' confinement. The trial court sentenced Houston accordingly, and he appealed.

**The Jury Charge**

In his first point, Houston contends that to avoid the enhancement of his punishment range, the punishment-phase jury charge improperly required him to prove beyond a reasonable doubt that he did not have a prior conviction.

3

Houston's first-degree-felony aggravated assault conviction carried a punishment range of five years' confinement to confinement for life. *See* Tex. Penal Code Ann. § 12.32(a) (West 2011), § 22.02(a)(1), (b)(1). The indictment's sentence-enhancement allegation, if proved and found true by the jury, raised the minimum punishment from five to fifteen years' confinement while retaining the maximum punishment at confinement for life. *See id.* § 12.42(c)(1) (West Supp. 2017).

Houston argues that the following provision of the jury charge improperly assigned him the burden to prove beyond a reasonable doubt that he did not have a prior conviction:

> You are instructed that if you find from the evidence beyond a reasonable doubt that the allegations in the repeat offender notice are not true, then you will assess the punishment of the defendant at imprisonment . . . for life or any term of not more than 99 years or less than 5 years.

Without disputing his failure to object to this charge, Houston argues that the charge resulted in egregious harm. Specifically, he contends that the trial court charged the jury with the exact opposite of the correct law, that the jury assessed a lengthy term of confinement, and that neither the State nor his trial counsel mitigated the harm by supplying the jury with a correct statement of the law.

The State responds that the charge, when construed in its entirety, correctly instructed the jury that the State had the burden to prove the enhancement allegation beyond a reasonable doubt. The State also asserts that the charge, even if erroneous, could not have egregiously harmed Houston

4

because he presented no evidence to challenge enhancement by his prior conviction; because he never argued for the five-year minimum of an unenhanced sentence, instead arguing for leniency by the fifteen-year minimum of the enhanced sentence; and because the jury assessed his punishment much closer to the identical maximum ranges of both the enhanced and unenhanced sentences than to their conflicting minimum ranges.

**Standard of review**

We must consider all alleged jury-charge error regardless of preservation in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error occurred, whether the appellant preserved the error determines the degree of harm required for reversal. *Id.* Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). The appropriate inquiry for egregious harm is fact specific, and we must assess harm on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious harm determination, we must assay the actual degree of harm in light of the entire jury charge; the state of the evidence, including the contested issues and weight of probative evidence; the argument of

5

counsel; and any other relevant information revealed by the record. *Almanza*, 686 S.W.2d at 171; s*ee generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

**Error**

To enhance a defendant's sentence through a prior conviction, the State must prove beyond a reasonable doubt that a prior conviction exists and that the conviction belongs to the defendant. *See Henry v. State*, 509 S.W.3d 915, 918 (Tex. Crim. App. 2016). Thus, we agree with Houston that the paragraph quoted above erroneously required proof beyond a reasonable doubt that he was not a repeat offender to permit the jury to consider the unenhanced range of his punishment. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007) (stating that the court's charge must set forth the law applicable to the case); *see also Williams v. State*, 899 S.W.2d 13, 14 (Tex. App.—San Antonio 1995, no pet.) ("The State has the burden of proof as to prior convictions alleged for enhancement of punishment, and the standard of proof is beyond a reasonable doubt."). We must determine whether this erroneous language caused egregious harm by evaluating the language in the context of the entire jury charge, the state of the evidence including contested issues and the weight of the probative evidence, counsel's arguments, and other relevant factors revealed by the record. *See Almanza*, 686 S.W.2d at 171.

6

**Egregious harm analysis**

**Context of the entire jury charge**

In context, the jury charge required the jury to make one of two mutually exclusive findings—the truth of the enhancement allegation or the falsity of the enhancement allegation—beyond a reasonable doubt:

> You are instructed that if you find from the evidence beyond a reasonable doubt that the allegations in the repeat offender notice are not true, then you will assess the punishment of the defendant at imprisonment . . . for life or any term of not more than 99 years or less than 5 years. . . .

> You are instructed that if you find from the evidence beyond a reasonable doubt that the allegations in the repeat offender notice are true, then you will assess the punishment of the defendant at imprisonment . . . for life or any term of not more than 99 years or less than 15 years.

The jury charge further provided that the jury could not consider previous crimes unless it found beyond a reasonable doubt that Houston committed them:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed crimes, wrongs, or acts, other than the offense for which you have found him guilty, you cannot consider said testimony *for any purpose* unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs, or acts, if any were committed, and even then you may only consider the same in determining the punishment which you will assess against the defendant in this case. [Emphasis added.]

Therefore, the trial court twice instructed the jury that it could not consider or use evidence of Houston's prior conviction to assess his punishment unless it found beyond a reasonable doubt that he had committed that crime.

7

Although requiring the jury either to find beyond a reasonable doubt that the prior conviction was true or to find beyond a reasonable doubt that the prior conviction was not true had the potential to cause confusion, the record does not indicate that the jury was in fact confused. The jury, which freely made use of notes to seek further guidance during the guilt phase of the trial, sought no further help during the punishment phase. Additionally, although erroneous in one paragraph, the jury charge still correctly required the jury to overcome the high burden of finding proof beyond a reasonable doubt that Houston was a repeat offender to enhance his punishment range. Under the language of the jury charge, in other words, the jury could not have chosen to apply the enhanced punishment range simply based on the language of the erroneous paragraph. Without any evidence to the contrary, we presume that the jury followed the trial court's explicit instruction to apply the increased punishment range only upon a finding beyond a reasonable doubt that the allegation in the repeat offender notice was true. *See Walker v. State*, 300 S.W.3d 836, 850 (Tex. App.—Fort Worth 2009, pet. ref'd).

**State of the evidence**

To prove Houston's prior conviction, the State produced testimony from his ex-wife. She testified that Houston had four prior felony convictions. The trial court admitted a certified pen packet of one of those charges—aggravated assault with a deadly weapon. The pen packet contained a criminal docket sheet bearing Houston's name and date of birth and reciting facts related to his

8

conviction and punishment, an indictment bearing his name and date of birth and containing the name of his ex-wife as the alleged victim, and a judgment of conviction associated with that indictment. Houston did not object to this evidence, did not produce any evidence to show a defect in the prior judgment, and did not present any evidence weighing against his prior felony conviction. Houston's cross-examination of his ex-wife focused on his relationship with her and his children rather than on the prior convictions. The State's evidence regarding the prior conviction used for enhancement remained uncontroverted.

**Counsel's arguments**

In his closing argument, Houston's counsel appeared to presume the truth of the prior conviction. For example, counsel based part of his argument on the theory that the police had failed to follow up on potentially exculpatory evidence because of their certainty that Houston was guilty based on his prior conviction. Counsel also explicitly argued that he did not dispute Houston's ex-wife's testimony. Additionally, while pleading with the jury to grant lenience, counsel referred to the enhanced, fifteen-year minimum sentence prescribed by the repeat offender statute rather than the unenhanced, five-year minimum sentence:

> And so as you are thinking about what to sentence him to, something *I want you to consider is if you are to find [the] repeat offender allegation true, the minimum sentence is 15 years. . . .*
>
> . . . .
>
> *Think about everything that has happened in your life in the past 15 years.* All the birthdays, all the Christmases, all the relationships. People who have passed away. And think about not

being a part of any of that. There are a lot of factors to consider. Yes, Adrick Houston isn't a perfect person, but he has done good in his life and there is always hope for change and rehabilitation. And that is why we would ask y'all to consider a minimum sentence to sentence Mr. Houston to. [Emphasis added.]

Houston neither offered any evidence nor any argument against his prior conviction; rather, he appeared to presume the truth of the prior conviction.

**Other relevant considerations**

As explained above, the sentence enhancement did not affect Houston's maximum punishment range. The jury had the option of assessing five years' confinement to confinement for life if it found Houston was not a repeat offender or fifteen years' confinement to confinement for life if it found he was a repeat offender. The jury assessed his punishment at seventy years' confinement, well within both ranges. Even assuming that the trial court's error affected which range the jury chose to assess Houston's punishment, we cannot conclude that a change at the minimum of the range from five to fifteen years' confinement likely affected the jury's decision to sentence Houston to seventy years' confinement. *Cf. Holt v. State*, 899 S.W.2d 22, 24–25 (Tex. App.—Tyler 1995, no pet.) ("[T]he sentence given here of eighty years was . . . remote from both the correct minimum range, fifteen years, and the erroneous minimum range given to the jury, twenty-five years. We therefore hold that the erroneously-charged minimum sentence, in light of the actual sentence given by the jury, was harmless beyond a reasonable doubt.").

10

**Conclusion**

For all of these reasons, we conclude that the *Almanza* factors weigh against egregious harm. The trial court correctly required proof beyond a reasonable doubt of a prior conviction to support the enhancement of Houston's sentence; Houston did not controvert testimonial and documentary evidence supporting the prior conviction; Houston's counsel's arguments appeared to presume the prior conviction; and the truth of his prior conviction did not appear to significantly affect the jury's assessment of the duration of his confinement. Because we conclude that Houston did not suffer egregious harm through the erroneous jury charge, we overrule his first point.

**Evidentiary Sufficiency**

In his second point, Houston contends that the evidence is insufficient to support his conviction because it fails to prove his identity as Yvonne's assailant. He argues that although Yvonne blamed him for the assault, he had an alibi. Furthermore, he asserts that although he had no motive to attack Yvonne, she had several motives to falsely blame him. Finally, he contends that his mother—his alibi witness—was a far more credible witness than Yvonne and that the jury was unreasonable in finding Yvonne's testimony more credible.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

11

307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

The State must prove beyond a reasonable doubt that the defendant is the person who committed the crime described in the indictment. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Lopez v. State*, No. 02-09-00121-CR, 2010 WL 1854420, at *3 (Tex. App.—Fort Worth May 6, 2010, pet. ref'd) (mem. op., not designed for publication). The State may prove identity by either

12

direct or circumstantial evidence. *Lopez*, 2010 WL 1854420, at *3. An eyewitness's identification of the defendant is sufficient to establish identity. *See Ford v. State*, 509 S.W.2d 317, 318 (Tex. Crim. App. 1974) (holding that positive identification of a defendant was sufficient to support his conviction despite alibi testimony that the jury was free to reject); *Kesaria v. State*, 148 S.W.3d 634, 640–41 (Tex. App.—Houston [14th Dist.] 2004) (holding that eyewitness identification of a defendant was sufficient to support a conviction despite contradicting alibi witnesses), *aff'd*, 189 S.W.3d 279 (Tex. Crim. App. 2006).

The State relied on Yvonne's repeated statements to identify Houston as her assailant. Yvonne identified Houston as the assailant in her initial 9-1-1 call. The first officer on the scene testified that Yvonne identified Houston as her assailant. Yvonne later identified Houston as the assailant to a detective while at the hospital. Yvonne maintained at trial that Houston was her assailant. Her identification of Houston as her assailant was sufficient for a jury to believe beyond a reasonable doubt that he was the perpetrator. *See Ford*, 509 S.W.2d at 318; *Kesaria*, 148 S.W.3d at 640; *see also Johnson v. State*, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ("Although appellant presented an alibi defense, what weight to give contradictory testimonial evidence is within the sole province of the jury, as it turns on an evaluation of credibility and demeanor.").

At trial, Houston relied on his mother's testimony to assert that he was at her house—not at the scene of the crime—during the assault. On appeal, he

13

argues that his mother, as a former Tarrant County supervisor and a postdoctoral fellow, was more credible than Yvonne. The jury, however, had the sole authority to resolve conflicts in the testimony and to weigh the evidence, including the relative credibility of the witnesses. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599; *Johnson*, 176 S.W.3d at 78. Disregarding or otherwise discounting the alibi testimony of Houston's mother was well within the jury's credibility prerogative.[4]

Viewing the evidence in the light most favorable to Houston's conviction, we conclude that a rational factfinder could have found him guilty. *See Jackson*,

---

[4]As the late Irving Younger observed in his classic discussion of the "nine pigeonholes" of impeachment, the motive for a loving mother to prevaricate on behalf of an accused child is a fertile area for prosecutorial cross-examination:

> Assume that the witness, an elderly woman, has testified in support of the defendant's alibi in a criminal case. You are the prosecutor. The woman has testified that the defendant was with her in the movies at the time the bank was robbed. You stand up. You have a good-faith basis, of course, and you ultimately say, "Well, madam, you are the defendant's mother, aren't you?" "Yes, I am."

> Not one question more is necessary; even a beginner could recognize it. No jury is going to believe that woman's testimony. She is the defendant's mother. . . . The woman has [a] . . . predisposition in favor of her son and an emotional stake in the outcome.

Irving Younger, *The Advocate's Desk Book: The Essentials of Trying a Case*, at 263–64 (Prentice Hall Law & Business 1989); *see also Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006) (explaining that a jury is not required to accept a defendant's mother's uncontroverted alibi testimony because "[s]he is, after all, the defendant's mother").

443 U.S. at 319, 99 S. Ct. 2789; *Jenkins*, 493 S.W.3d at 599.  We overrule his second point.

## Conclusion

Having overruled both of Houston's points, we affirm the trial court's judgment.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL:  WALKER, MEIER, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 1, 2018