

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00281-CR

_____

KEVIN M. GIBSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1389802D

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

A jury convicted appellant Kevin M. Gibson of arson of a habitation, a first-degree felony.[1] On appeal, he contends that the evidence is insufficient to support his conviction because the jury could not have rationally determined beyond a reasonable doubt that he started the fire. He challenges the credibility of the State's witnesses who identified him as the arsonist, and he contends that the jury irrationally rejected his defensive theories. Deferring, as we must, to the jury's resolution of conflicting evidence and of conflicting inferences from that evidence, we hold that the evidence is sufficient to support Gibson's conviction. We affirm.

## Background

Gibson met Giovana while he was serving in the Army in Panama. They married, began living in the United States in 1990, and had children together. Gibson's friend, who was also in the Army, married (and later divorced) Giovana's sister Mariana, and they also moved to the United States. Mariana eventually had two daughters, Stephanie and Marcy.[2]

Gibson and Giovana's relationship became contentious. They divorced in 2012, and they engaged in disputes concerning custody of their minor children and

---

[1] *See* Tex. Penal Code Ann. § 28.02(a)(2)(D), (d)(2).

[2] We use "Marcy" as a pseudonym to preserve the anonymity of Mariana's second daughter, who was a minor at the time of the fire and when she testified. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

concerning possession of their house. At some point, Gibson accused Giovana of scratching up his Porsche and of damaging parts of his house. She accused him of putting sugar in her gas tank with the intent of damaging her car. Before the events leading to Gibson's arson charge, he called the police when Giovana removed personal property from his house. In July 2012, Giovana sent Gibson an e-mail stating, "[A]sshole you will never take my kids from me. [I] will never give your things back that [I] took. [Y]ou cannot prove [I] damaged your car or your house. [I] will take all your money and there is nothing you can do about it." Around that same time, Gibson gave Giovana notice that under the terms of their divorce decree, she was required to vacate the house.

One early morning in October 2014, while Gibson and Giovana's relationship remained acrimonious and while their child-custody dispute was pending, Mariana and Marcy, who was approximately twelve years old at the time, were sleeping together in a one-bedroom apartment. Mariana awoke when Jackson, a Chihuahua, started barking. When Mariana went toward the apartment's front door, she saw "a sparkle like fire crackers on the bottom of the door." She then saw flames. She attempted to open the front door, but the handle was hot. According to her testimony, she looked through a glass door outside the apartment and saw Gibson running away from the fire.

Mariana called 9-1-1 but hung up to extinguish the fire. She filled a laundry basket with water and doused the fire several times. She then called the police again.

3

She told the dispatcher that she had seen a "guy driving a Porsche" while looking out a window. She also referred to a "black Dodge."[3] Later in the call, she told the dispatcher that she knew that Gibson had set the fire.

After calling the police the second time, Mariana, who was hysterical, called Stephanie to tell her about the fire and to inform her that Gibson had started it. Stephanie drove to the apartment.[4] She saw the burnt front door and noticed that Mariana was shocked and that Marcy seemed "numb."

Video surveillance equipment, which Stephanie had bought after her truck had been stolen at the same apartment complex, recorded events inside and outside the apartment at the time the fire was set from four angles. Upon arriving at the apartment, Stephanie watched the recordings and identified Gibson's black Porsche in the parking lot near the time of the arson.

Bobby Perkins, a Fort Worth police officer, went to the apartment. He noticed that Mariana was angry and agitated. Mariana told Officer Perkins that she knew who had set the fire.

---

[3]Concerning her statement about the Dodge, Mariana testified at trial, "In a moment of [being] nervous and scared, I [said] -- I don't know why I [said] a Dodge, because it was a Porsche, because he had the Porsche for a long time."

[4]Stephanie lived at the apartment but was not staying there that morning.

Chris Nelson, a Fort Worth firefighter and arson investigator, also went to the apartment. Outside the apartment's front door, he saw a newspaper[5] and pieces of wood, indicating to him that someone had set the fire intentionally. Nelson determined that the arsonist had used a combustible substance, later found to be gasoline[6] through testing at a lab. Nelson spoke to Mariana and to Stephanie, and they told him that Gibson had set the fire. Concerning his conversations with Mariana and with Stephanie on the morning of the arson, Nelson later testified, "They were very, very, very adamant on scene as knowing that person, the way he walked, the way he looked, the vehicle he drove. They were very, very adamant about knowing that." Based on Mariana's and Stephanie's attitudes and the manner in which they were discussing the fire, Nelson believed that they were telling the truth, and he secured an arrest warrant.

Ernesto Tamayo, a Fort Worth police officer, executed the arrest warrant at Gibson's house and saw the Porsche. According to Officer Tamayo, when he told Gibson about his arrest for arson, Gibson did not act surprised; he became quiet and

---

[5]The newspaper was a publication from Keller. Someone at the scene told Nelson that Gibson subscribed to that newspaper, but Nelson did not confirm that statement by contacting the newspaper.

[6]Nelson did not attempt to find Gibson's Porsche to determine whether any gasoline had spilled inside it or to search his house to determine whether he had a gas can. At trial, he opined that such evidence would have "proved nothing." Nelson did not obtain a search warrant to examine Gibson for the purpose of determining whether Gibson had a burn injury.

"kind of shut down."[7] Officer Tamayo opined that Gibson's reaction was inconsistent with someone who did not commit an offense.

A grand jury indicted Gibson with arson of a habitation. Gibson retained counsel and pleaded not guilty at a jury trial. He testified and denied that he had set the fire. He also called an alibi witness, his former girlfriend Sandra Estrada, who testified that she was with him on the morning of the fire.

After hearing the parties' evidence and arguments, the jury found Gibson guilty and found that he had used or exhibited a deadly weapon while committing the offense. The jury heard more evidence and arguments concerning his punishment, assessed ten years' confinement, and asked the trial court to suspend that sentence and place Gibson on community supervision. The trial court did so. Gibson brought this appeal.

## Evidentiary Sufficiency

In one point, Gibson argues that the evidence is insufficient to sustain his conviction. He argues that the jury could not have rationally found beyond a reasonable doubt that he set the fire because evidence about his acrimony with Giovana suggested that her family was biased against him and framed him for the crime; because the surveillance videos that purportedly show him or his Porsche are

---

[7]Gibson disputed Officer Tamayo's account of the arrest. He testified, "[Officer Tamayo] would not tell me any details. I tried to get him to tell me what was going on. He refused. He just said he had a warrant to arrest me."

of poor quality; because the videos discredit Mariana's and Marcy's identifications of him as the arsonist by establishing that the man who set the fire had driven away before Mariana opened the apartment's door; and because an alibi witness testified that she was with him at the time of the arson.

**Standard of review and applicable law**

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV; Tex. Penal Code Ann. § 28.02(a)(2) (stating the elements of arson of a habitation). In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on

7

the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

**Inculpatory value of Mariana's, Marcy's, and Stephanie's identifications**

Gibson challenges the credibility of the identifications made by Mariana and Marcy, who testified that they saw Gibson fleeing from the arson when it occurred, and of Stephanie, who testified that she recognized him from the surveillance recordings. Concerning Stephanie's testimony, Gibson argues that the recordings show only "an unidentifiable man," and he contends that Mariana's and Marcy's accounts of seeing him flee are "wholly refuted" by the recordings, which show that the man who set the fire drove away before Mariana opened the apartment's door.[8]

Mariana's and Marcy's identifications of Gibson as the arsonist did not depend upon an open front door to the apartment. Rather, Mariana testified that after she awoke to Jackson's barking, she followed him to the front door of the apartment, saw

_____

[8]In his brief, Gibson states that the recordings "establish that the man in the black car was not only already in his car, but had . . . driven off before Mariana went to the door."

sparks through the door, and saw Gibson through a "big slide glass door" before she opened the front door.[9] Concerning her identification of Gibson from looking out the glass door, Mariana testified, "I [have] know[n] him all my life[,] . . . and I know his back side from anywhere. I can see him from the distance, and I know who he is." Mariana testified that she had "[n]o doubt" that she saw Gibson running away from the fire.

Gibson emphasizes that "[c]ontrary to her trial testimony, Mariana told Officer Perkins that she put out the fire with a bucket of water and then ran out on the balcony to see Gibson drive away in a . . . Porsche." Officer Perkins's police report, which he completed the morning of the fire, stated that after Mariana doused the fire, she ran onto the balcony and saw Gibson driving away.[10] Similarly, Nelson wrote that Mariana saw Gibson as she was "putting water on the fire." The video recordings show that Gibson had driven out of the frame of the recordings long before Mariana doused the fire, and it is therefore unlikely that she saw him after dousing the fire. But to the extent that the inculpatory value of Mariana's testimony about seeing Gibson at

---

[9]Consistent with this testimony, the trial court admitted testimony that Mariana gave at a hearing in another case. In that testimony, she stated that after she awoke because of Jackson's barking, she went toward the front door of the apartment, tried to calm Jackson, saw flames near the door, looked out the glass door to the balcony to discern the cause of the fire, and saw Gibson running to his car.

[10]At trial, Officer Perkins testified that he wrote what Mariana had said to him to the best of his memory; he averred that the report was a "summary of what was said."

the time of the arson hinges on a conflict between her testimony and what she told Officer Perkins and Nelson on the morning of the fire, the jury could have reasonably resolved that conflict by accepting her testimony. *See Griffin v. State*, No. 05-16-00289-CR, 2017 WL 929498, at *2 (Tex. App.—Dallas Mar. 9, 2017, pet. ref'd) (mem. op., not designated for publication); *Golden v. State*, No. 05-95-01174-CR, 1997 WL 524158, at *2 (Tex. App.—Dallas Aug. 26, 1997, pet. ref'd) (not designated for publication) ("The jury was entitled to believe Clayton's trial testimony, the police report, both, or neither. The determination of the witness's credibility was within the factfinder's discretion.").

Next, Marcy, who was fifteen years old at the time of the trial, testified that on the morning of the fire, she awoke to the sounds of a fire alarm and of a dog barking. She testified that while she was helping Mariana put out the fire, Mariana was screaming, "It was [Gibson]." Marcy testified that while she was attempting to find a container to fill with water, she looked out a bedroom window and saw Gibson's Porsche driving away. She explained that she recognized Gibson's Porsche because she had seen it on several occasions and had ridden in it. Although Marcy testified that Mariana had already opened the front door when Marcy saw Gibson's Porsche, and although the arsonist's car was not in the frame of the video recording at that time, no evidence forecloses the possibility that Marcy saw the Porsche at a distance from the apartment that the recording did not capture. Furthermore, the jury had the prerogative to accept Marcy's testimony that she saw Gibson even if it rejected that

she did so after Mariana opened the door. *See Franklin v. State*, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.) ("[T]he jury is free to accept or reject any or all of the evidence of either party, and any or all of the testimony of any witness.").

Next, the jury heard Stephanie testify that from watching the surveillance recordings, she knew that Gibson had set the fire. She averred that in the recordings, she recognized Gibson's Porsche, which Gibson had owned years before the fire, from a distinctive narrow shape on its front end and a round shape on its back end. She testified that she had seen Gibson drive that car several times over a number of years. Also from the recordings, Stephanie identified Gibson through his gait. She testified, "I've known him for years, and I know how he walks." She stated, "His belly pops out like that, and he just stumbles like that, like a little duck walk." She testified that she had "[n]o doubt at all" that the man in the video was Gibson.

Gibson appears to challenge Stephanie's testimony based on the quality of the recordings. But the jury could have rationally found that the recordings were sufficient to support Stephanie's testimony. The recordings show that for nearly a minute at 4:01 a.m., a dark car drove slowly through the apartment complex's parking lot and backed into a parking space. The recordings further show from two angles that at 4:04 a.m., the arsonist got out of that car and walked slowly toward the apartment, remaining in the frame of the recording for almost twenty seconds. At 4:06 a.m., the arsonist returned to the car and was visible in the recordings for another twenty seconds. The arsonist then walked back to the apartment, and the recordings captured

11

his slow walk for twenty more seconds. Finally, at 4:08 a.m., after setting the fire, the arsonist quickly walked to the car, remaining in the frame of the recording for about ten seconds. The recordings then show the arsonist pulling out of his parking space and driving outside the frame of the recordings.

We conclude that the jury could have rationally accepted Stephanie's identification of Gibson through the recordings. *See id.* Although Gibson emphasizes that the recordings do not show the arsonist's face, Stephanie did not identify Gibson by his face; rather, she identified him by his Porsche and by his gait, which the recordings depict.

For all of these reasons, we conclude that the jury could have rationally relied on the confident, unwavering identifications provided by Mariana, Marcy, and Stephanie to find that Gibson was the arsonist. *See id.*

**Alleged bias of the State's witnesses**

Gibson next asserts that the jury's verdict was irrational because Giovana's family members, who provided the primary inculpatory testimony, were "wholly biased" and had motives to frame him for the arson. At trial, through his questioning of the witnesses and during argument, Gibson presented the defensive theories that the State's witnesses lied about his setting the fire to retaliate against him for past events or to support Giovana and harm Gibson in their court battles, including their child-custody case and a lawsuit involving monetary damages. Gibson testified that after he and Giovana divorced, contrary to the divorce decree, Giovana and her

12

family took $50,000 worth of his personal property. He also explained that upon their divorce, Giovana stayed longer in his house than the divorce decree allowed, and he had to give her a notice to vacate the home. Next, he testified that while he was on an out-of-state trip, Giovana scratched his Porsche and caused several thousand dollars in damage. He also testified that inside his house, Giovana cracked ceramic tiles, poured grease on carpets, and knocked holes in walls. He sued Giovana for the damage caused to his car and house; he testified that she responded by unsuccessfully filing for bankruptcy and that his suit against her was still pending at the time of the arson trial. Gibson testified that as a result of being charged with arson, the court with jurisdiction over his children's custody lessened the amount of time that he could spend with them. During Gibson's cross-examination by the State, the following exchange occurred:

> Q. So it's your testimony that Giovana hated you so much that she would get her sister to set her apartment on fire with her 12-year-old daughter at 4:00 in the morning and somehow stage this whole scene?

> A. I believe they did. I was in shock that they did it.

Even if this evidence might have led a hypothetical reasonable factfinder to conclude that Giovana's family concocted a scheme to set fire to the apartment and testified against Gibson out of spite or with the purpose of helping Giovana in litigation, it was the jury's prerogative to choose between reasonably equal competing theories. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Gregory v. State*, 159 S.W.3d 254, 261 (Tex. App.—Beaumont 2005, pet. ref'd). By its verdict, the jury

implicitly rejected Gibson's defensive theory and found the State's witnesses credible. *See Luna v. State*, No. 02-17-00124-CR, 2018 WL 4140852, at \*6 (Tex. App.—Fort Worth Aug. 30, 2018, no pet.) (mem. op., not designated for publication). For the reasons articulated above, we conclude that the jury did not act irrationally by implicitly determining that the State's witnesses were credible; thus, we likewise conclude that the jury did not irrationally reject Gibson's defensive theory that implicated them in a scheme to frame him for the crime.[11]

**Gibson's alibi witness**

Finally, Gibson contends that the jury irrationally rejected the testimony of Estrada, his former girlfriend. Estrada testified that on the morning of the arson, she was staying with Gibson at his house, and he never left. She averred that she is a light sleeper and explained that she would have awoken if Gibson had gotten out of bed and had left the house. On cross-examination, Estrada conceded that she had never contacted the police or the district attorney's office to claim that Gibson could not have committed the crime because he was with her that morning.

---

[11]Along with asserting that Giovana's family had a motive to frame him for arson, Gibson contends that the State did not prove his motive for setting the fire to the apartment. While a defendant's motive may circumstantially support a jury's finding of guilt, motive is not an essential element of an offense that the State must prove beyond a reasonable doubt. *See Clayton v. State*, 235 S.W.3d 772, 781 (Tex. Crim. App. 2007); *McIntare v. State*, No. 02-18-00145-CR, 2018 WL 2976446, at \*5 (Tex. App.—Fort Worth June 14, 2018, no pet.) (mem. op., not designated for publication).

Gibson agreed with Estrada that she was staying with him on the morning of the arson. He testified that they were sleeping in a bedroom above the garage, that the garage door is noisy when it opens, and that opening it would have awoken someone sleeping in that room.

Nelson testified that he did not investigate whether Gibson had an alibi who could attest to his whereabouts at the time of the arson. He also stated, however, that no one ever contacted him purporting to be an alibi.

The jury was free to accept the testimony of the State's witnesses and reject Gibson's alibi defense. *See Ford v. State*, 509 S.W.2d 317, 318 (Tex. Crim. App. 1974) (holding that eyewitness identification of a defendant was sufficient to support his conviction despite alibi testimony that the jury was free to reject); *Johnson v. State*, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ("Although appellant presented an alibi defense, what weight to give contradictory testimonial evidence is within the sole province of the jury, as it turns on an evaluation of credibility and demeanor."). We conclude that the jury did not act irrationally by rejecting Estrada's alibi testimony.

**Summation**

For all of these reasons, we conclude that the jury could have rationally relied on the testimony of the State's witnesses, including Mariana, Marcy, and Stephanie, to find that Gibson was the arsonist, and the jury could have reasonably rejected Gibson's defensive theories. Viewing all of the evidence in the light most favorable to

the verdict and deferring to the jury's implicit resolution of conflicting evidence in favor of Gibson's guilt, we conclude that a rational factfinder could have found beyond a reasonable doubt that Gibson committed arson of a habitation. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. We therefore hold that the evidence is sufficient to support his conviction, and we overrule his only point.

## Conclusion

Having overruled Gibson's only point, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 28, 2019